Good morning, your honors. Are we ready to proceed? We are. Thank you. My name is Matt Schindler. Just one second. Are you ready to proceed, Judge Fischer? I am. Okay. We are. Thank you, sir. Good morning, your honors. My name is Matt Schindler. I am appointed counsel for Mr. Raul Arcila. And we are here today to discuss his appeal that emanates from a jury trial where he was convicted of an offense involving a 20-year mandatory minimum sentence. The cornerstone of the part of the appeal that I'm handling, my colleague, Mr. Anderson, is handling the sentencing issues that were presented in this case. So I'll reserve about half the time and allow Mr. Anderson to address those issues and questions that the Court may have. I focused my So you're suggesting he will address the penalty enhancement and the actual sentencing? That's correct, your honor. My focus in the briefing in this case were on the trial and evidentiary issues that are presented by the unusual instructions and foreseeability requirement that were injected into this case. And that interests me. So let me ask you, let me tell you what interests me about this and see if you can help me. The jury was instructed that the heroin use had to be the but-for, that was part of the instructions, had to be the but-for cause of the death, correct? Correct. That was not objected to? That's correct. Do you think that's the correct standard? Absolutely. Okay. So let's assume that the jury found that the heroin, as it must have, that the heroin use was the but-for cause of the death. Isn't foreseeability, doesn't that place a greater burden on the government? In other words, well, how does the foreseeability instruction hurt you if you think that all that was required was but-for? Well, it seems to me it asked the government to prove more than it needed to. I just disagree fundamentally with that analysis because at the end of the day, what reasonable foreseeability allowed the government to do in this case was to introduce evidence that wouldn't otherwise be relevant. To have a metaphor. I'm asking about the instruction now. Okay. Let's just focus on the instruction. Okay. We'll go back to the evidence. We're talking about the special verdict. Special verdict. Certainly. How were you hurt by the special verdict question since if the jury found but-for cause, it didn't matter whether there was foreseeability? Maybe that's a better way of phrasing it. Well, I think that perhaps you aren't hurt by it at the outset, but I think when the jury gets to the point of considering an instruction that says, on one hand, don't consider reasonable foreseeability. No, they weren't. They were instructed simply to find but-for. They were asked a separate question, was there foreseeability. But the question might have to be. I'm still having difficulty. I understand why you don't like the evidence that came in to show foreseeability. That's a separate question I want to ask you next. Okay. But just focusing on the jury question for a moment, you couldn't be hurt by that question, could you? Well, I think you can. Because, again, what it's asking the jury to do, in this case, the jury was told in its but-for analysis, don't consider any of this reasonable foreseeability. And then it's asked if it finds this but-for causation, then to analyze reasonable foreseeability in this separate context. It wasn't told to sequence. It was just asked this question, right? The question didn't say if you find but-for cause, then we want you to move on to foreseeability. Yes, that's the way it was structured. So still the same problem. Your view is that they never should have been asked to answer the separate question, correct? Correct. And that the way it was written and drafted was inherently confusing and contradictory. Given the fact that they were told to find but-for cause first, and they did, how were you harmed by them being asked an irrelevant question?  I'm asking because you have the burden of showing, since you never objected to the question at trial, you have the burden. I wasn't at trial, so I didn't object to anything. Your side has the burden of showing plain error. And I appreciate you weren't there, but you're stuck is what the attorney did. That's fair. So I'm trying to figure out why this was plain error since the objection, since the special verdict was never objected to. And I'm still stuck with that question that I'm asking, which you still haven't gotten, given me an answer to. Given that the jury found but-for cause, and you think, let me finish, and you think but-for cause is the appropriate standard and was told not to move on to this interrogatory until it found but-for cause, how were you harmed? Well, let's say, I'll acknowledge that there may have not been. You weren't harmed, personally. There was no, let's say there isn't a specific harm that emanates from a jury instruction like that. I just think, as a human being that speaks English, it makes no sense. But as a lawyer arguing an appeal in which no objection was made, you have to demonstrate to us that the error was so plain that it infected the fairness of the proceedings. Oh, understood. Not making sense, you know, not making sense isn't the standard we operate under. So again, I really, because it's the center of your case, tell me how it prejudiced your client. Well, if you're going to force me to say that the specific jury instruction considered in isolation without all the other things that the government piled in behind that didn't harm my client, I can't say that. Of course it harmed him. So let's go backwards then, because it seems to me your real argument in this case is that the introduction of the heroin harm evidence, to which you did object at the time, your client, the lawyer below did object, was so prejudicial that it shouldn't have come in. Isn't that the real argument in this case? No. The real argument is that when you look at all of these things, not in isolation but connected, in other words, the instructions that were received, the legal arguments that were made relative to those, the evidence that was admitted in order to prove reasonable foreseeability and the idea that reasonable foreseeability in a heroin case makes no sense. Everyone knows that heroin kills people. Well, just a minute, let's start over. I've listened to everything you've said. Judge Smith. Go ahead. Judge, I can't hear you. All right, I'll get up here. You're leaning back. I'll get up here close. How's that? Thank you. All right, sorry. I've heard everything you've said to Judge Hurwitz's questions. And I guess I want you to step back one more time and think about the answer she gave. Because we're really here on plain error review. We're not here on, is this an abuse of discretion problem with a special verdict form? We're not here on whether this is an abuse of discretion, whether they introduce evidence about the harmful effects. We're here on plain error because nobody asked the district court to think about it. And now, I'll be fair, I thought about this the same way Judge Hurwitz did. If, in fact, you've already proven the but-for cause, it doesn't seem to me there's much left except to make the government go the extra step past but-for by suggesting that somehow it's reasonably foreseeable, even though but-for, and step back. This is plain error review. I've got to find an error. I've got to make it plain. And I've got to have something in the record to say, I've got to toss this over. So think about his questions again. Maybe you can give me a different response. I'm not entirely sure what the response would be. My view of this trial in its entirety, considering the totality of the record and the way that the government presented evidence of reasonable foreseeability, is that a heroin, a case about distribution of heroin where the defendants have stipulated that heroin killed the person. You cannot, there is no, it is a plain error to have a medical examiner come and testify about expectorating blood around the walls and about how many hundreds of thousands of people are dying from heroin overdoses. That was not an appropriate thing for this to be in this case. But just a minute. If we, go ahead. Can I try to clarify? Sure. The special verdict came after all the evidence had already been admitted, correct? Yes, sir. Okay. So why is it Judge Hurwitz correct? Your real complaint is admission of the evidence in the first place. This special verdict form didn't exist until after that. But the government's evidence was framed by a legal requirement that didn't exist. It proved an element of the crime that's not there. So let's get back to my question, because now Judge Fischer has framed it in exactly the way I want you to try to answer it. The evidence you must be claiming was irrelevant and overly prejudicial, correct? Of course. Okay. So we view that under what standard? Well, in this case, I think, depending on whether or not there was an abuse, was an objection. Was there an objection to the introduction of the evidence? I think at certain times there was not, no. So we would review that for a plain error? Yes. Okay. That's what I was trying to get to before. And it seems to me, frankly, that if, in fact, we're going to have a special verdict form that's going to allow somebody to talk about foreseeability, that your second question, as of whether this evidence ought to come in, is really answered by answering the first question. I mean, if you're going to talk about that in the jury, you've got to have some basis to base that, haven't you? Sure. So if I don't think there's plain error in the special verdict form, then how am I going to find plain error in the introduction of evidence which would be enough to establish what needed to be done in the special verdict form? Well, because the special verdict was never required in the first place. Once it was there, once the government knew it wanted to prove reasonable foreseeability, that became a giant avenue for irrelevant, unfairly prejudicial evidence. So it's connected. That's the — I mean, I understand what you're saying, that it may not be plain error to have a jury instruction in and of itself, but it — what it led to in the context of the trial affected fairness. Yeah. And I know it's not your fault. I mean, when I say you, I always mean your side. But had defense counsel said at trial, Your Honor, we don't need — you know, we stipulate that but-for cause is enough. We don't need foreseeability and we're — and therefore we object to this instruction and the evidence, presumably the district judge would have had a chance to — to say, okay, then we don't need this evidence and we don't need the instruction. But in the absence of those objections, that's why we're struggling with how to — how to deal with this case. Well, I understand. And I mean, there's nothing obviously I can do about the conduct of the trial of counsel. I just read a transcript and look at a trial that's about heroin and not about the elements of the crime. I'm going to give my — yield my remaining time to my co-counsel. Well, frankly, you did a good job. We're glad to let you do that. We just asked you the toughest questions we could come up with. Thank you, sir. Good morning, Your Honor. Good morning, Judge Fischer. Ben Anderson. Good morning. May it please the Court. I am here on sentencing issues, as Mr. Schindler discussed earlier. And the place to start, I think, in this analysis is the statute, and it is also the indictment which flowed from that statute. The statute that we're discussing is 21 U.S.C. 846. That is the statute that sets out the penalties that would be imposed on a conviction for a conspiracy to commit a controlled substance offense. Right. And it says you get the same penalty as if you committed the substantive offense. Well, that is the — Well, that is the language of the statute, is it not? No, Your Honor. I would clarify that the language of the statute is a bit more broader than that. And when I say — Any person who attempts or conspires to commit any offense defined in this subchapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the subject of the attempt or conspiracy. You agree with me that's the entire language of the statute? Yes. That is correct. Now that we've — now that we've both focused on the same — Now we've focused on that language, and U.S. v. Vera also focused on that language. Tell me why the district court erred. Your Honor, what 846 does is it limits the exposure of a defendant upon conviction to what the object of the conspiracy was. So in this case, the object of the conspiracy was to distribute heroin, period. And what is the penalty for distribution of heroin? Twenty-year maximum, no minimum. And isn't that what — and the judge gave 20 years? The 20 — yes. She imposed — So tell me why that was error. Well, that was error because she imposed that due to her perception and her ruling that it was a mandatory minimum, not that it was a lifetime maximum and a 20-year mandatory minimum. Well, but I'm — you have two arguments, as I understand it. One is that she made a statutory mistake in sentencing to the 20-year to life, and the other one is that she made a guidelines mistake. Correct. On your statutory — I'm having trouble understanding the statutory one. We've read this statute. It says you get the same sentence as if you had committed the substantive offense, the object of the — of which is the object of the conspiracy. Right. Or attempt. You said the object of the conspiracy was the distribution of heroin. Right. The penalty for the distribution of heroin is — that results in death is 20 years to life, no? Well, but that — you made one skip there that I think is the problem. And the skip that you made was that in a substantive offense, if I delivered heroin to somebody and that person died, I would be exposed to that 20-year mandatory minimum. It's different pursuant to 846. In a conspiracy — So I'm still not understanding your argument, so this is why I'm asking. Is it your — what fact was lacking in this case that would — to subject your client to a 20-year to life sentence? The fact that was never indicted or proven or — was the fact that the object of the conspiracy also included the resultant death. Oh. So your — what your argument is that the object of the conspiracy must be to cause death. The object of the conspiracy is what controls the maximum and any minimums. Well, but under the substantive statute, heroin distribution, you agree you don't have — the object of that conspiracy doesn't have — the object of that distribution doesn't have to be to cause death. Correct. It's simply enough if death results. Correct. So your argument is that when you're charged with contempt or conspiracy, in addition, you must intend to cause death.  Okay, now I understand your argument. Right. And I would point to that. You know, Vera, we've talked quite a bit about Vera. There's also a couple other cases cited in the briefs that go to that. One of them is Navaretti-Aguilar, which — But do you think Vera establishes what you are now arguing? In Vera, for example — Because I read Vera and I thought, I don't know how he's going to distinguish it. Well, Vera — here's how I would distinguish Vera. In looking at the indictment language — and I'm not sure if the indictment itself is actually quoted in the Vera opinion, but the indictment language itself says — I was going to say, in Vera, I didn't see the indictment language. All I saw was the end result of what happened in Vera. Why don't we ask Judge Fischer what Vera means? Yeah, Judge Fischer. You wrote it? I know a little bit about Vera. No, don't ask him. Go ahead. I'm sorry. I realize I'm also going to be talking about Navaretti-Aguilar, which is also authored by Judge Fischer. But here's what Vera went to. In Vera, in terms of the sentencing, they vacated the quantity findings in that case. They did not vacate the conviction itself. And I'm not asking to vacate the conviction in this case either. I'm just saying that what Vera says is that because the drug quantity findings had a problem, that affected the sentence in Vera. And that's why it was remanded for resentencing. But it wasn't just kicked out. It wasn't — the conviction itself was not invalidated. In the indictment in Vera, for example, the co-conspirators did conspire and agree with each other to knowingly and intentionally distribute and possess with intent to distribute more than 100 grams of heroin, for example. And there's a number of other indicted offenses. In this case, if you look at the indictment, it does not accuse either party or anybody of agreeing to distribute more than a kilogram of heroin. It just accuses them of conspiring to deliver heroin. And then the indictment goes on to further allege that it involves more than a kilogram. And that is, I think, the correct approach if we're talking about a substantive crime. But it's not the correct approach if you're trying to get a mandatory minimum out of it. To accuse somebody of a conspiracy. We've already gone over your time. Thank you very much for your argument. We'll turn to the government. May it please the Court. Kelly Zoosman, appearing on behalf of the United States. You know, I think the trouble that we have with all of the issues that have been raised here is that none of them were raised before the district court. So Judge Brown was never asked to decide whether or not it was improper to give a reasonable foreseeable time. Well, she was asked to give the instruction. She didn't come up with that to respond to. The government asked her to give the instruction. That's correct. Why? And we did it. And this is in the record. I know you say you did it because our case law is unclear. And maybe it would have been error not to give it, right? In part. So, yeah, there are two answers to your question. The first is we were concerned about the question left open in Burrage. The second is we wanted to protect the conviction in the event this Court or the Supreme Court were ultimately to hold that proximate cause is required. And as you may or may not fully appreciate, trials of this kind in which a death results cause a particular strain on the victims. So Mr. DeLong's family members were present. They have received notice of this hearing. So when we've got victims who are affected by the trial, we have a keen interest in not wanting to have to retry the case. We also have cooperators who have a long history of heroin abuse. And so in the event this Court were to send this back for a new trial, it's oftentimes just not possible to do that. Is that why the interrogatory becomes an afterthought in this case? In other words, make out the case we think the statute requires. But just to be certain, we want to ask you this question. That's exactly right. We'll only get to it once you've concluded that the defendant is guilty under. Under. But for. But for. Exactly. So can you help me with respect to the evidence that was introduced? Some of it seems, there seems to be some objections and in other places not objections. What's the government's view about whether the heroin effect evidence was objected to? And I, I, I searched through the record. I only found two instances in which there were actually objections made at trial. So there were some motions in limine back and forth in which this wasn't raised. The government, because of the stipulation, I think this is an important point. Because the defendant stipulated that the death was in fact the result of a heroin overdose, there were four photographs that the government withdrew. And those were the photographs of Mr. DeLong. And they were pretty shocking. So your but-for case was made by the stipulation. Exactly. And, and that's exactly why we withdrew the photographs of the victim, which would have shown that in fact all of the outward signs were that, was that he did in fact die as a result of a heroin overdose. Now getting back to your initial question, the only two objections that I found that the defense made at trial, one is at page ER 918. And that was when Detective Anderson was relating that Michael Rosa told us that he had purchased an ounce. And there was an objection to that on the basis of hearsay. And the government's response was, we're not offering it for its truth. We're simply offering it to show that that was why we set up the controlled buy later between Rosa and Shane Baker for an ounce, which was we wanted to replicate what their ordinary practice was. The only other objection that I found, and this is that excerpt of record 638 to 646, was when Detective McNair was testifying about statements that Mr. Sandoval made. There was an objection that that was hearsay, and Judge Brown overruled that objection because in fact it was a statement of a party opponent. So those are the only two objections that I found to any of this in the record. Otherwise, it all came in without anyone standing up claiming 403, unfair prejudice, or the like. And in fact, our position is that all of the evidence that they've complained about was in fact relevant not for reasonable foreseeability, but more to rebut the defense that Mr. DeLong could have obtained these drugs either from Nick Post, who he was texting to try and get a hold of and then apparently never did, because he was trying to get heroin from both Godvin and Nick Post. He hooked up with Godvin. He never hooked up with Nick Post. And also to rebut the suggestion that this may have been an overdose attributable to China White, which was something that Rosa picked up when he was in Ohio. So the evidence that we brought forth was designed to show that in fact DeLong died as a result of ingesting black tar heroin. That's an Oregon product. It's not something Rosa picked up from Ohio, and it's lethal. So move to the penalty enhancement. You heard what counsels argued here. What's your response? I did. And I don't see how you can square their argument with this Court's ruling in Masias. So Masias says that when you're charged a conspiracy, that it's the same penalties that would apply under 841B1C. And here, that's that death resulted from the ingestion of this substance. And Masias specifically rejected the defense argument in that case, that somehow because the charge was one of conspiracy rather than underlying distribution, that there was an additional element. And there's simply no authority. There's nothing in the statute, nor is there any case that holds that we have to prove that these defendants actually intended death to result. That would be a different charge. If they were trying to kill off their customers, that would be murder. It wouldn't be land bias. The counsel never got to, because we ran out of time, the argument made in the briefs about the guidelines, alleged guidelines error. Can you address that? Yeah. And I'm not sure I ever fully understood the guidelines error. I do know that by operation of the guidelines, that the statutory mandatory minimum became the guideline sentence. And the judge only gave the statutory mandatory minimum? For both defendants. So is that argument really is dependent on the first one? In other words, in the absence of error in applying 841A6 or whatever it is, then any error in calculating the guidelines made no difference because the mandatory minimum was given. That's correct. I just wanted to see how they tied together. Yeah. I didn't see a distinction between the two. And certainly once we have the mandatory minimum in place, then the guideline analysis becomes moot or irrelevant. It might make a difference had the judge sentenced to a sentence greater than the mandatory minimum. It might have. But we certainly haven't suggested that there should have been a sentence higher than that. We haven't raised that on appeal. I also had a question for the government on this. There seem to be other convictions here. Correct. Are they, in your view, are they affected by any of the arguments made here? I don't believe they are. And, in fact, we moved to dismiss count two after the Ed's sentencing so that it was count one that was really the driving force. And they didn't receive any additional time. I think it was Mr. Arcio was also charged in counts nine and ten. And those essentially merged. So count one formed the basis for both defendant sentences. Judge Fischer, do you have any questions? No. Thank you. Yeah. Unless the panel has further questions, I would submit. If we have further questions. Thank you, ma'am. Thank you. Do you want to give him a minute? Pardon? Give him a minute. Sure. My colleague wants to give you a minute. I was going to give you one, but he's very nice. So I'll give you a minute. I appreciate that, Your Honor. I would like to briefly address the Macias-Valencia issue, unless the judge had a different  Now, in Macias-Valencia, I believe that actually supports our position. Macias-Valencia, he pled guilty. The defendant pled guilty to an indictment that alleged as, and this is in, I believe, quoted in the opinion at page 1013, a conspiracy to distribute 50 grams or more of meth. So contained within the object of that conspiracy was the trigger that would trigger the mandatory minimum. The issue in Macias-Valencia was that there was never actually any drugs anywhere. It was a reverse sting operation. And the issue was, hey, can I come up and make a conspire to buy some meth from you, and you don't actually have meth. So there was never actually any methamphetamine, or I can't remember what the actual drug was. So the issue in Macias-Valencia was exactly what the point I'm trying to make, is that the conspiracy, the object of which was to obtain 50 grams or more of a drug, that's not the actuality. So in this case, in our case, what we have is a conspiracy that doesn't have any object that would trigger a mandatory minimum, and instead the government is relying on the result to impose a mandatory minimum. That's exactly what Macias-Valencia says shouldn't happen. Macias-Valencia says that it's the object of the conspiracy that drives the boat. Thank you. Thank you. Case 16-30109 and 30110 are hereby submitted, and we'll move to case 1535834, American Fuel versus O'Keeffe and California Air Resources Board.
judges: Fisher, N.R. Smith, Hurwitz